

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

Signed July 27, 2011

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE:<br><br>Whittle Development, Inc.,<br><br>    Debtor. | § § § § § § § | Case No. 10-37084-HDH-11 |
| Whittle Development Inc.,<br><br>    Plaintiff,<br>v.<br><br>Branch Banking & Trust Co.,<br>Successor to Colonial Bank, N.A., and<br>EAGLE TX I SPE, LLC d/b/a<br>EAGLE LOAN STAR I SPE, LLC,<br><br>    Defendants. | § § § § § § § § § § § § § § § | Adversary No. 11-03150 |

**MEMORANDUM OPINION ON DEFENDANTS' MOTION TO DISMISS**

This opinion deals with the issue of whether a debtor in possession can avoid a pre-petition real property foreclosure on the grounds that the foreclosure constituted a preferential transfer, even though the foreclosure sale complied with state law and was non-collusive.

On April 29, 2011, Defendants filed their Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted ("Motion to Dismiss"), which seeks to dismiss Counts 1, 5, 6 and 7 of the Plaintiff's First Amended Complaint (the "Complaint"). On May 23, 2011, Plaintiff responded to the Motion to Dismiss, and agreed to the dismissal of Counts 5, 6 and 7. The Court held a hearing on June 3, 2011, and after reviewing the pleadings and hearing the arguments of counsel, the Court finds that the Motion to Dismiss should be denied as to Count 1.

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. This proceeding is core, pursuant to 28 U.S.C. § 157(b)(2).

## I. Background Facts

Whittle Development Inc. ("the Debtor") is a real estate corporation located in Dallas, Texas. On December 31, 2007, the Debtor and Colonial Bank, N.A. entered into a Development Loan Agreement (the "DLA") by which Colonial agreed to loan the Debtor $2,700,000.00. Colonial was later acquired by Branch Banking and Trust Company ("BB&T"), and BB&T became the successor in interest to Colonial.

Sometime in 2010, BB&T declared a default, accelerated the payments owed by the Debtor, and notified the Debtor of its intent to foreclose on the Debtor's property securing the loan, and on September 7, 2010 BB&T foreclosed on the property. It is stipulated that the foreclosure sale complied with all relevant Texas requirements for a valid foreclosure.

The property was sold to Eagle TX I SPE, LLC d/b/a Eagle Loan Star I SPE, LLC ("Eagle"), a subsidiary of BB&T, for $1,220,000.00. On October 4, 2010, the Debtor filed a petition under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code" or

"Code"). On February 7, 2011, BB&T filed a proof of claim in the Debtor's bankruptcy case in the amount of $2,855,243.29. BB&T alleges that $1,181,513.27 of its proof of claim represents the deficiency from the foreclosure sale. The Debtor argues that the approximate value of the property is $3,300,000, that BB&T's claim on the property at the time of foreclosure was approximately $2,200,000, and that BB&T was thus over secured by $1,100,000.

## II.  Analysis

### *The 12(b)(6) Standard*

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir.2008). Federal Rule of Civil Procedure 8(a)(2) states that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, a complaint must contain facts that are "enough to raise a right to relief above the speculative level ." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The complaint must have "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Id.*

The Supreme Court in *Aschroft v. Iqbal*, explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Id*., ___U.S. ___, 129 S.Ct. 1937, 1950 (2009). First, the court must identify those pleadings that are not supported by factual allegations, "because they are no more than conclusions, [and] are not entitled to the assumption of truth." *Id*. Second, upon identifying well-pleaded factual allegations, the court will "assume their veracity and then determine whether they plausibly give

rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

*Preferences—Federal Principles*

"A preference is 'a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankrupt estate.' " *Barrett Dodge Chrysler Plymouth, Inc. v. Cranshaw (In re Issac Leaseco, Inc.)*, 389 F.3d 1205, 1209 (11th Cir. 2004) (*quoting Union Bank v. Wolas*, 502 U.S. 151, 160–61, 112 S.Ct. 527, 533, 116 L.Ed.2d 514 (1991)). The ability to avoid preferential payments was placed in the Bankruptcy Code to discourage creditors from "racing to the courthouse to dismember the debtor during his slide into bankruptcy," and to "facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor." *Id*; *see also* H.R. Rep. No. 95-595, pp. 177-178 (1977), U.S.CODE CONG. & ADMIN. NEWS 1978, pp. 6137-6138.

The basic goal of the Bankruptcy Code with respect to preferences is to secure equal distribution of the debtor's assets among his creditors and to prevent favoritism. *See Howard Delivery Service v. Zurich Amer. Insur. Co.,* 547 U.S. 651, 655 (2006); *see also Cimmaron Oil Co., Inc. v. Cameron Consultants, Inc*., 71 B.R. 1005, 1011 (N.D. Tex. 1987). To that end, section 547 allows the trustee, or debtor in possession, to avoid pre-petition transfers that are deemed to be preferential. See 11 U.S.C. § 547(b).

Section 547(b) provides in pertinent part:

(b) the trustee may avoid any transfer of an interest of the debtor in property—

    (1) to or for the benefit of a creditor;

    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

    (3) made while the debtor was insolvent;

    (4) made—

        (A) on or within 90 days before the date of the filing of the petition; or

        (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

    (5) that enables such creditor to receive more than such creditor would receive if—

        (A) the case were a case under chapter 7 of this title;

        (B) the transfer had not been made; and

        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition. 11 U.S.C. § 547(f). As applied to the present facts before the Court, section 547 allows a debtor to avoid preferences, including a transfer of property to a creditor because of an antecedent debt, that gives the creditor more than it would have received as payment on that debt in a case under chapter 7 of the Code had the transfer not been made.

There is no real dispute between the parties that a transfer of the Debtor's interest occurred by the foreclosure sale by BB&T. *See* 11 U.S.C. § 101(54). Nor do they dispute that the Debtor has stated a facially plausible claim as to the other requirements of section 547(b),

save one—subsection (5), which requires a finding that the creditor received more than it would have under chapter 7. *See* 11 U.S.C. § 547(b)(5). BB&T argues that this subsection cannot be satisfied as a matter of law because the Supreme Court's decision in *BFP v. Resolution Trust Corp.*, which held that a non-collusive foreclosure sale conducted in accordance with applicable state law was, as a matter of law, "reasonably equivalent value." *Id*. 511 U.S. 531, 545, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).

In essence, BB&T's argument is that the price determined by bid at the foreclosure sale is the fair market value of the property. The Debtor, in turn, argues that because the property was worth more than the amount owed to BB&T, Defendants did receive more through foreclosure because they received claims and real property with an aggregate net value of 3,261,513.27 ($2,080,000.00 net property value—which is the total property value of $3,300,000.00 less the amount paid at foreclosure of $1,220,000.00—and a deficiency claim of $1,181,513.27) in satisfaction of the debt owed of $2,200,000.00, which would have been the maximum recovery in chapter 7. Further, the Debtor asserts that the Supreme Court's decision in *BBT* dealing with fraudulent conveyances cannot be used in the preference context because the language in sections 547 and 548 is not the same and the two provisions are concerned with different points in time. *See In re Villarreal*, 413 B.R. 633 (Bankr. S.D. Tex. 2009)

*The Statutory Language Controls*

A transfer can only be avoided if the transfer "enables [the] creditor to receive more than [it] would receive if the case were a case under chapter 7 of" the Code. 11 U.S.C. § 547(b)(5)(A). When interpreting a statute "[i]n the bankruptcy context, the analysis must end with the text if the language is clear and does not lead to an absurd result." *In re Ran*, 607 F.3d 1017, 1025 (5th Cir. 2010) (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 238, 109

S.Ct. 1026, 103 L.Ed.2d 290 (1989). Although the Code at times is "awkward, and even ungrammatical . . . that does not make it ambiguous." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). Therefore, looking at the unambiguous language of the statute, it would seem that the only thing that must be shown is that the creditor did, in fact, receive more from the pre-petition transfer than it would have under a Chapter 7 liquidation in order for § 547(b)(5)(A) to be satisfied.

The Debtor argues that if there is a discrepancy in the amount that is actually obtained in the foreclosure sale, and the amount that the court deems would have been obtained in the hypothetical Chapter 7 liquidation, then this element of a preference is met. This was the approach taken in *In re Villarreal*, 413 B.R. 633, 642 (Bankr. S.D. Tex. 2009), where Judge Isgur found that the amount obtained in a pre-petition foreclosure sale was less than what would have been obtained in a sale under Chapter 7. In *Villareal*, the property was valued by the creditor's appraiser to be worth approximately $4,020,000. *Id.* at 637. The foreclosing creditor purchased the property for $70,000, exchanging his $70,000 claim for the property. *Id.* The rest of the claims against the property totaled less than $750,000. *Id.* The court found that the foreclosure enabled the creditor to obtain a windfall of $3,250,000, and that the transfer was avoidable notwithstanding the fact that the foreclosure sale was non-collusive and complied with state law. *Id.* Other courts have also found the holding in *BFP* to be inapplicable in the context of section 547. *See, e.g., In re Rambo*, 297 B.R. 418 (Bankr. E.D. Pa. 2003), *In re Andrews*, 262 B.R. 299 (Bankr. M.D. Pa. 2001).

*Other Courts Have Disagreed*

Some courts, have disagreed with this analysis and have deemed that the amount obtained at the foreclosure sale is the amount that would be obtained in a hypothetical liquidation, citing

the Supreme Court's decision in *BFP*. *See, e.g., Chase Manhattan Bank v. Pulcini (In re Pulcini)*, 261 B.R. 836 (Bankr. W.D. Pa. 2001); *In re FIBSA Forwarding, Inc.*, 230 B.R. 334, 341 (Bankr. S.D. Tex. 1999) *aff'd*, 244 B.R. 94 (S.D. Tex. 1999). In *BFP,* the Supreme Court was addressing the language in § 548(a)(2)(A) concerning whether a transfer was avoidable as a fraudulent transfer, because the debtor received "less than a reasonably equivalent value." *BFP*, 511 U.S. at 545. The Court declined to measure "reasonably equivalent value" according to other valuation standards such as fair market value or "fair foreclosure price" because doing so would impinge on an important state interest of securing title's to real estate by placing a "federally created cloud" on property bought at foreclosure. *Id*. Supreme Court noted that "[f]ederal statutes impinging upon important state interest 'cannot . . . be construed without regard to the implications of our dual system of government.'" *Id*. at 544 (quoting Frankfurter, SOME REFLECTIONS ON THE READING OF STATUES, 47 Colum.L.Rev. 527, 539-540 (1947).

When courts cite to *BFP* in the context of section 547 actions, they cite similar federalism concerns. *See, e.g., In re Pulcini*, 261 at 844. These courts reason that allowing a debtor to avoid a foreclosure sale would subvert state interests since the foreclosure sale complies with state law. *See Id.* Specifically, a *bona fide* purchaser of foreclosed property would have the security of their otherwise valid title disturbed by federal bankruptcy law. *Id*.

This reasoning was also advanced by the district court in *FIBSA Forwarding, Inc.*, where the court granted a creditor's motion for summary judgment in a preference action. *In re FIBSA Forwarding, Inc.*, 230 B.R. at 341. The *FIBSA Forwarding* court found that it was bound by the Supreme Court's decision in *BFP*, despite also finding that the foreclosure sale did allow the creditor to obtain more than it would have otherwise in a chapter 7 liquidation. *Id. at 338*. The *FIBSA Forwarding* court stated that

> "[t]he apparent lesson of *BFP* is that if a creditor is oversecured, the Debtor must file a bankruptcy petition (or creditors must file an involuntary petition) before foreclosure to prevent the secured creditor from reaping a windfall at the expense of other creditors. If the Debtor does not do so, there would appear to be no protection for unsecured creditors who do not have knowledge of the foreclosure in time to file an involuntary petition."

*Id.* at 314.

In examining the plain, unambiguous language of the Code, the application of the Supreme Court's reasoning in *BFP* to section 547 appears misplaced. The Supreme Court's analysis of section 548(a)(2)(A) concerned what, as a matter of law, "reasonably equivalent value" meant. *BFP*, 511 U.S. at 533. No such legal issue presents itself in avoidance actions under section 547(b)(5)(A) since the operative question is simply whether the creditor did in fact receive more than it would have had the transfer not occurred. The lack of a legal issue does not impose such a stark conflict with state policy goals since such transfers may be examined on an individualized basis and not, as a matter of law, be avoidable as preferential transfers.

The issue posed before the Supreme Court was a wholly different quality. If the court had ruled differently in *BFP* all transfers of real estate in a foreclosure sale could be declared fraudulent since the transfer would not, as a matter of law, yielded "reasonably equivalent value in exchange." In dealing with preferential transfers, there is no such risk. If an otherwise valid foreclosure sale is found to enable a creditor to obtain more than he would in a chapter 7 liquidation, then the additional amount of benefit conferred to the creditor is simply brought back into the estate. The purchaser of the real estate at the foreclosure does not necessarily lose its property unless the purchaser is the creditor himself. This approach furthers the state's interest in maintaining the security of titles without subverting the policy of the Code of maintaining equality among the creditors.

As a matter of policy, this is probably the optimal approach to this issue. As the court in *FIBSA Forwarding, Inc.* noted, a creditor who is able to foreclose prepetition may be able to achieve a windfall unless the debtor or the other creditors file an involuntary petition before the foreclosure. *In re FIBSA Forwarding, Inc.*, 230 B.R. at 341. Such a result creates the so-called "race to the court house" that the Code tries to prevent. By allowing the trustee (or the debtor-in-possession in a chapter 11 case) to bring an avoidance action, a court risks wasting judicial resources on another evidentiary hearing to determine whether the foreclosure sale did result in a better outcome for the creditor than he might otherwise have received. Such a risk is marginal compared to the risk of a creditor is able to achieve a windfall profit at the expense of the estate by the mere virtue that she had the prescience to foreclose before a petition could be filed.

There are obvious situations whereby a foreclosing creditor could obtain a valuable piece of real estate for less than what it is actually worth. The court in *Villareal* noted that "a chapter 7 trustee has the time and incentive to promote a competitive auction or to find a buyer willing to pay a fair market value. *In re Villarreal*, 413 B.R. at 641. The court in *Rambo* noted also that

> "[c]learly there are circumstances where the value a Chapter 7 trustee could secure is greater [than] the aggregate of all liens, costs of sale and the debtor's exemption, and the trustee would seek to sell the asset to provide a dividend to unsecured creditors. In such instances, the price the trustee could secure could not be the equivalent of the amount bid-in at a foreclosure sale."

*In re Rambo,* 297 B.R. at 432. Given that it is not only possible but probable that a trustee will secure more than the foreclosing creditor will on his own, the policies of the Code are furthered if a secured creditor can be prevented from reclaiming property and earning a windfall at the expense of the estate.

As stated earlier, the risks to third parties who buy the property at the foreclosure are non-existent. A purchaser without a claim against the debtor is not subject to a preference action, regardless of the price it pays at the foreclosure sale, since the section only allows

avoidance of transfers "to or for the benefit of a creditor." 11 U.S.C. § 547(b)(1). The risk is to the creditor-purchaser who buys the property at foreclosure at an artificially low price and either sells it for a profit or holds it for later investment or use. The difference in the value between what the creditor would have received and what it actually recovered will be taken from the creditor, and not from the third party who represents the *bona fide* purchaser of the property. Thus, the concerns addressed in *BFP* are moot in the context of section 547 avoidance action.

Finally, the Court notes that any alleged cloud on title created by a potential preference claim is substantially more limited than in the fraudulent transfer area. Foreclosures by non-insider creditors may not be set aside as a preference if they occur more than ninety days before the bankruptcy case. 11 U.S.C. § 547(b)(4)(A).

### III. Conclusion

If a creditor executes on secured property and obtains the property for what is found to be less than what it would have garnered in a hypothetical liquidation, then the transfer may be avoided under the plain meaning of section 547(b). The Supreme Court's decision in *BFP* is not controlling, because the plain meaning of section 547 allows the avoidance of the foreclosure sale, and the federalism concerns that other courts have cited in cases subsequent to *BFP* are inapplicable to section 547 actions. Thus, a chapter 11 debtor-in-possession can avoid a pre-petition foreclosure on the grounds that the foreclosure constituted a preferential transfer, even though the foreclosure complied with state law and was non-collusive.

Based on the foregoing, the Debtor has set out a claim that is facially plausible, and the Motion to Dismiss will be denied as to Count 1. The Debtor shall upload an order consistent with this opinion.

###End of Memorandum Opinion###